No. 99-426

IN THE SUPREME COURT OF THE STATE OF MONTANA

1999 MT 339

297 Mont. 427

993 P.2d 672

STATE OF MONTANA,

Plaintiff and Respondent,

v.

LARRY K. BROWN,

Defendant and Appellant.

APPEAL FROM: District Court of the Fifth Judicial District,

In and for the County of Jefferson,

Honorable Frank M. Davis, Judge Presiding

COUNSEL OF RECORD:

For Appellant:

Joseph R. Massman, Massman Law Office, Helena, Montana

For Respondent:

Honorable Joseph P. Mazurek, Attorney General; Mark Mattioli,

Assistant Attorney General, Helena, Montana

Valerie Wilson, County Attorney, Boulder, Montana

Submitted on Briefs: December 9, 1999

Decided: December 29, 1999

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

¶ Following his conviction of two counts of felony assault on a peace officer, Larry K. Brown appeals. We affirm the judgment of the Fifth Judicial District Court, Jefferson County.

¶ The issues are:

¶ 1. Did the trial court improperly deny Brown's motion to dismiss on due process grounds for failure to hold a probable cause hearing within 48 hours of Brown's arrest?

¶ 2. Did the trial court prejudice the jury panel by its reference to the failure of Kirk Brown, Larry Brown's brother and co-defendant, to appear for trial?

¶ 3. Did the trial court improperly allow prospective Juror No. 14 to stay on the jury panel, necessitating the use of a peremptory challenge by the defense?

¶ Larry K. Brown was arrested on the night of Friday, February 13, 1998, at a bar brawl in Boulder, Montana. He was initially held in the county jail in lieu of a $5,000 bond set by

No

the Jefferson County Justice of the Peace. On Tuesday, February 17, the Justice of the Peace ordered that Brown be released by 5:00 p.m. because no complaint or citation had yet been filed against him. Brown was released, but he was immediately rearrested pursuant to a District Court warrant on two counts of assaulting a peace officer, pursuant to § 45-5-210, MCA. The charges were based on allegations that Brown had kicked one police officer in the head and stomped on another officer's arm while they attempted to arrest him at the bar brawl.

¶ Brown's trial was joined with the trial of his brother, Kirk Brown, on charges arising out of the same incident. A joint trial was set for September 1998, and a jury panel was drawn. Brown and his attorney appeared in court on the date set for trial; Kirk Brown did not appear. At that time, the following colloquy occurred:

> THE COURT: Okay, members of the jury, we're here to try a criminal case, State of Montana against Larry K. Brown and State of Montana against Kirk L. Brown. Are the defendant–Is the State ready for trial?

> MS. WILSON: Judge, the State is ready for trial.

THE COURT: And the Defendant?

> MR. SHEEHY: The Defendant Larry Brown is ready for trial Your Honor. Mr. Kirk Brown is not here.

> THE COURT: So, Larry Brown is not here. Can we go ahead and try Kirk?

> MR. SHEEHY: Larry is here, Your Honor.

> THE COURT: Oh, Larry's the one that's here. Kirk's not here.

> MR. SHEEHY: No, Your Honor.

> THE COURT: What are the circumstances about him?

> MR. SHEEHY: It's my understanding, Your Honor, that he was in the State of Washington and was on his way back here. At least that was the information I received, that he was catching a ride back about 7:30 or 8:30 last night and he's not arrived.

THE COURT: And you haven't heard from him.

MR. SHEEHY: No, Your Honor.

THE COURT: Well, all right. Folks, I want you all to stand up and the clerk is going to swear you.

¶ During jury selection, the prosecuting attorney, Wilson, noted that she was acquainted with prospective Juror No. 14 and that the prospective juror's grandson would be a minor witness in the case. Wilson asked prospective Juror No. 14 if she thought this would make it difficult for her to sit on the jury. The juror responded that she thought it would.

I. ¶ The District Court then cut in:

THE COURT: Well, I don't think it would. You can sit and listen to the testimony of all the witnesses and the exhibits and give the Court and other jurors a good and fair judgment of this matter; can't you?

JUROR NO. 14: I hope so.

THE COURT: Well, I know you can.

MS. WILSON: You think you can be fair?

JUROR NO. 14: I think, under the circumstances, I could beings I did not know too much about this beforehand.

MS. WILSON: Before today, okay. And you don't have any knowledge of any of the facts that will be presented today.

JUROR NO. 14: No, I don't.

THE COURT: And you certainly don't know these Defendants.

JUROR NO. 14: No, I don't.

MS. WILSON: Okay.

THE COURT: Okay.

The defense subsequently used one of its peremptory challenges to disqualify Juror No. 14.

¶ Following a one and one-half day trial, the jury convicted Brown of the charges against him. Based upon that conviction, Brown's past criminal history, his denial of responsibility, and his apparent lack of remorse, the court sentenced him to five years in prison on each count, to be served concurrently.

Issue 1

¶ Did the trial court improperly deny Brown's motion to dismiss on due process grounds for failure to hold a probable cause hearing within 48 hours of Brown's arrest?

¶ As indicated above, Brown was arrested and jailed on Friday night, February 13, 1998. On Saturday, February 14, the arresting officer prepared an affidavit of probable cause for Brown's continued detention, which was then notarized by the Jefferson County Justice of the Peace. Monday, February 16, 1998, was a federal and state holiday. A motion for leave to file information was filed in the District Court and a bench warrant for Brown's arrest was issued on Tuesday, the 17th of February. Brown's initial appearance was delayed for one day to accommodate the filing of felony charges in District Court. The information was filed on Wednesday, February 18, when Brown also made his initial appearance and was arraigned.

¶ In arguing that no timely probable cause hearing was held, Brown refers to *County of Riverside v. McLaughlin* (1991), 500 U.S. 44, 111 S.Ct. 1161, 114 L.Ed.2d 49. In that case, the Court held:

> Where an arrested individual does not receive a probable cause determination within 48 hours, . . . the arrested individual does not bear the burden of proving an unreasonable delay. Rather, the burden shifts to the government to demonstrate the existence of a bona fide emergency or other extraordinary circumstances. The fact that in a particular case it may take longer than 48 hours to consolidate pretrial proceedings does not qualify as an extraordinary circumstance. Nor, for that matter, do intervening weekends. A jurisdiction that chooses to offer combined proceedings must do so as soon as is

reasonably feasible, but in no event later than 48 hours after arrest.

*County of Riverside*, 500 U.S. at 57. Brown also refers to the provisions of §§ 46-11-101 and -110, MCA, as to the determination of probable cause. He asserts that the combined effect of these statutes requires that, in Montana, a complaint must be filed and approved by a court for there to be a judicial determination of probable cause; and that under *County of Riverside*, that determination must be made within 48 hours of arrest.

¶ "[J]urisdictions may choose to combine probable cause determinations with other pretrial proceedings, so long as they do so promptly." *County of Riverside*, 500 U.S. at 58. The State argues that the Justice of the Peace's notarization of the probable cause affidavit within 24 hours of Brown's arrest constituted a finding of probable cause. We disagree.

¶ In Montana, a sworn complaint or affidavit provides the basis for the determination of probable cause warranting criminal charges. *See* §§ 46-10-105(2), 46-11-110, and 46-11-201(2), MCA. Although the probable cause affidavit in this case was not a charging document, it was a proper basis for the probable cause determination required by the Fourth Amendment. But when the Jefferson County Justice of the Peace notarized the probable cause affidavit, that notarization did not constitute a probable cause determination. In ordering Brown released on February 17, the Justice of the Peace effectively acknowledged that he had made no such probable cause determination.

¶ However, the question before us in this appeal is not whether Brown was accorded a timely probable cause determination, but whether the District Court erred in refusing to dismiss the charges against Brown as a remedy for failure to hold a probable cause hearing in a timely manner. Dismissal of charges is not the correct remedy for failure to timely charge a person who has been arrested without a warrant. *State v. Dieziger* (1982), 200 Mont. 267, 270, 650 P.2d 800, 802. Instead, the remedy for a delay in the initial appearance is exclusion of evidence acquired as a result of that delay. *State v. Beach* (1985), 217 Mont. 132, 150, 705 P.2d 94, 105. In this case, because Brown did not incriminate himself while in jail, his remedy would be release, or, failing that, a possible civil action for false imprisonment. *See State v. Benbo* (1977), 174 Mont. 252, 261, 570 P.2d 894, 899-900. We hold that the District Court did not err in denying Brown's motion to dismiss on due process grounds for failure to hold a probable cause hearing within 48 hours of Brown's arrest.

## Issue 2

¶ Did the trial court prejudice the jury panel by its reference to the failure of Kirk Brown, Larry Brown's brother and co-defendant, to appear for trial?

¶ The court's reference to Kirk Brown's failure to appear for trial is quoted above. Brown did not object at any time in District Court to this reference by the court to the fact that Kirk Brown did not appear for trial. In general, failure to raise an issue in district court bars a defendant from raising the issue on appeal. Section 46-20-701, MCA.

¶ In any event, Brown was not prejudiced. The jury was instructed to disregard evidence regarding Kirk Brown in assessing Brown's guilt. There is nothing to indicate that the jury disregarded that instruction. Moreover, defense counsel argued that Kirk Brown, not Brown, was the guilty party. If any inference of guilt existed, Brown acquiesced in it and tried to take full advantage of it at trial. "Acquiescence in error takes away the right of objecting to it." Section 1-3-207, MCA.

¶ We hold that Brown, who was not prejudiced, has waived this issue.

Issue 3

¶ Did the trial court improperly allow prospective Juror No. 14 to stay on the jury panel, necessitating the use of a peremptory challenge by the defense?

¶ Brown correctly asserts that the District Court should not have questioned prospective Juror No. 14 as it did. "It is not a district court's role to rehabilitate jurors whose spontaneous, and thus most reliable and honest, responses on voir dire expose a serious question about their ability to be fair and impartial." *State v. DeVore*, 1998 MT 340, ¶ 28, 292 Mont. 325, ¶ 28, 972 P.2d 816, ¶ 28. Brown asserts that this Court's decision in *DeVore* controls and that this Court must reverse his conviction.

¶ Unlike the defendant in *DeVore*, however, Brown did not challenge the prospective juror for cause. Under these circumstances, and notwithstanding Brown's unsubstantiated suggestion that he would have risked contempt or alienating the jury had he objected to the court's colloquy, we will not hold the court in error. As we noted under Issue 2, failure to raise an issue or objection below generally bars consideration of the issue on appeal.

¶ Affirmed.

/S/ J. A. TURNAGE

We concur:

/S/ W. WILLIAM LEAPHART

/S/ JIM REGNIER

/S/ KARLA M. GRAY

Justice James C. Nelson specially concurs.

¶ I concur in our opinion. Having done so, however, I want to make it clear that, had trial counsel properly objected to the District Court's questions and remarks to Juror 14, I would reverse Brown's conviction on the basis of our decision in *State v. DeVore*, 1998 MT 340, 292 Mont. 325, 972 P.2d 816.

¶ Here the trial court went beyond "rehabilitating" the juror. Indeed, the court simply substituted its contrary determination for the juror's own judgment that she would have difficulty sitting on the case where she was acquainted with the prosecutor and where her grandson was going to be a witness. Until judges become mind readers, trial courts are simply going to have to credit a juror's spontaneous and candid assessment of her own state of mind.

¶ Worse, when she is sitting in an unfamiliar and imposing courtroom surrounded by her peers, attorneys, possibly other members of the community, and the trial judge, it strains credulity to believe that a prospective juror is going to persevere in her personal concerns about her ability to fairly hear the case and be able to resist the sort of "rehabilitative" statements and questions leveled at her by the court and counsel as are noted in our opinion. It would be a truly exceptional citizen who would persist in her belief that she

cannot fairly hear a case when the presiding judge has told her unequivocally, in front of everyone gathered in the courtroom, that he has decided that she can.

¶ I concur, but only on the basis of the defendant's waiver of this issue for purposes of appellate review.

/S/ JAMES C. NELSON