DA 06-0131

# IN THE SUPREME COURT OF THE STATE OF MONTANA

2007 MT 227

STATE OF MONTANA,

      Plaintiff and Respondent,

  v.

RUSTY ROGERS,

      Defendant and Appellant.

APPEAL FROM:    District Court of the Eighteenth Judicial District,
In and For the County of Gallatin, Cause No. DC 05-35,
Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Suzanne C. Marshall, Marshall Law Firm, P.C., Bozeman, Montana

      For Respondent:

          Honorable Mike McGrath, Attorney General; Tammy K. Plubell,
Assistant Attorney General, Helena, Montana

          Marty Lambert, County Attorney; Ashley Harrington, Deputy
County Attorney, Bozeman, Montana

Submitted on Briefs:  February 7, 2007

Decided:  September 11, 2007

Filed:

_____
Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1     Appellant Rusty Rogers (Rogers) was charged with two counts of felony sexual assault upon two child victims, in violation of § 45-5-502, MCA.  The two children, L.W. and E.K., were four and six years old at the time of the assaults and were children of friends of the defendant. Rogers appeals his conviction by jury in the Eighteenth Judicial District Court, Gallatin County.  We affirm.

¶2     Rogers raises the following issues on appeal:

¶3     1.  Did the District Court abuse its discretion by denying Rogers' challenge for cause of Juror Welter?

¶4     2.  Did the District Court err when it denied Rogers' motion for a directed verdict?

¶5     3.  Did the District Court err by giving the jury a "dynamite" instruction?

¶6     4.  Did the District Court impose an illegal sentence by failing to apply the statutory exception to the mandatory minimum sentence, and by sentencing Rogers based upon his lack of participation in a court-ordered psychosexual evaluation?

**FACTUAL AND PROCEDURAL BACKGROUND**

¶7     On February 14, 2005, the State of Montana filed an information charging Rogers with two counts of sexual assault upon two child victims, L.W. and E.K., in violation of § 45-5-502, MCA.  The District Court conducted a jury trial on October 18 and 19, 2005, after which the jury found Rogers guilty of both counts.  On appeal, Rogers takes issue with certain aspects of his trial, including voir dire proceedings, his motion for

2

a directed verdict, an instruction given to the jury during their deliberations, and his sentencing.

¶8     During voir dire proceedings, prospective juror Bennie Welter revealed that it would be difficult for him to be an objective juror given that sexual assault of children was at issue. The following dialogue took place between Juror Welter and counsel for the State:

> MS. HARRINGTON: All right. Let's get to the issues in the case. This defendant has been charged with two counts of Sexual Assault alleged to have been committed on two separate girls. . . . Just knowing that this trial is going to involve issues of sexual assault upon a child, is there anyone who feels they cannot sit as a juror? Yes, sir?
>
> JUROR WELTER: I have an 11-year old daughter of my own and I don't, for lack of a better description, prefer to sit in that chair. I can't be objective.
>
> MS. HARRINGTON: There are a lot of emotions associated with that— that first confrontation with the issue of a child being molested. There are a lot of jurors here, prospective jurors who have kids. As a matter of fact, everybody with kids under the age of 25, why don't you throw up your hands. Okay, almost everybody. Do you think that part of this process in determining whether or not the State can prove this case beyond a reasonable doubt should involve parents?
>
> JUROR WELTER: I really don't see how it can go without it.
>
> MS. HARRINGTON: Okay. And that the goal of the process is, if proven guilty, convict him, keep him from doing it again, right?
>
> JUROR WELTER: Yeah.
>
> MS. HARRINGTON: But if we don't, to keep somebody who has been accused, maybe wrongfully, from being convicted at a criminal trial. Is that fair? . . . But the real question is, did it happen. Would you agree that that is a conclusion that you can't come to until you've heard all the evidence in the case?

3

JUROR WELTER:  That would be true, yeah.

MS. HARRINGTON:  And until you hear that evidence from the mouths of the witnesses on that witness stand, Mr. Rogers is presumed innocent of the charges against him.

JUROR WELTER:  Supposed to be.

MS. HARRINGTON:  Supposed to be.  You have a—a gut feeling otherwise?

JUROR WELTER:  Well, just the fact that kids are involved.

. . . .

MS. HARRINGTON: All right.  Let's get back to the impartiality issue. Do you think that just because the defendant is sitting there, that he's guilty of something?

JUROR WELTER:  No.

¶9     After the State had completed its voir dire, defense counsel questioned Juror

Welter as follows:

MS. MARSHALL:  Now, Mr. Welter, I'm going to come back to you.  You talked about having a daughter and how this is an emotional thing for you. Tell me what kinds of emotional components or emotional things you have with that.  Tell me what about this case, what kind of gets your hackles up?

JUROR WELTER:  My first thought when I heard what the case entails is—was my daughter and what I would have done had my daughter been in the same situation.

MS. MARSHALL:  And I'm not looking for the reaction so much as if your daughter had come to you and said, somebody touched me inappropriately in my private area, what would you want to know, what would you do?

JUROR WELTER:  I would want to know who and where this individual was.

MS. MARSHALL:  And how would you investigate that?

4

JUROR WELTER:  Confrontation.

. . . .

MS. MARSHALL:  In light of your feelings with your daughter, and it sounds like you have strong feelings about this particular subject, do you think that you could be fair to [Rogers] if you were chosen to be on the jury?

JUROR WELTER:  I don't know.

MS. MARSHALL:  Do you think that—have you read about sexual assault?

JUROR WELTER:  Somewhat.

MS. MARSHALL:  How long have you felt strongly about this issue?

JUROR WELTER:  Since my daughter was born.

MS. MARSHALL:  And are you likely to change your mind within the next week?

JUROR WELTER:  I don't know.  I don't think so.

MS. MARSHALL:  And if the judge tells you, to be a juror on this case, you have to leave your opinion about your own daughter or your own circumstances at the door, and completely abandon it for the duration of the trial, you could—even if you could do it, it'd be very difficult, wouldn't it?

JUROR WELTER:  It'd be pretty difficult, yes.

MS. MARSHALL:  And you could bring yourself to decide that perhaps [Rogers] didn't do these acts, but it'd be really hard?

JUROR WELTER:  Anything's possible, yes.

MS. MARSHALL:  So, you'd start out wanting to think that, yeah, he probably did this?

JUROR WELTER:  More than likely.

5

> MS. MARSHALL: And deciding against that would be pretty hard for you, wouldn't it?
>
> JUROR WELTER: It depends on what the case proves.

Counsel for Rogers then moved the District Court to dismiss Juror Welter for cause. The State objected, and the District Court agreed that defense counsel had to do more to prove bias, since the totality of Juror Welter's answers both to the State's questioning and defense counsel's did not indicate that Juror Welter would be unable to follow the District Court's instructions regarding the presumption of innocence. Defense counsel concluded her voir dire of Juror Welter with the following exchange:

> MS. MARSHALL: Do you think that your ability to sit on the jury would be impaired at all, in any way, by your belief about sexual assault crimes?
>
> JUROR WELTER: At this point, I don't think so.

Defense counsel then moved on to questioning other jurors, and subsequently used a peremptory challenge to remove Juror Welter. Defense counsel used all of her peremptory challenges.

¶10 The evidence produced at trial established that Maggie and Dan H. are married and have a son, I.H., and two daughters, E.K. and L.W. According to trial testimony, Rogers would visit Maggie and Dan's home approximately once a month, and often sat on the couch in the living room with the girls, tickling them and holding them on his lap, while Maggie and Dan were occupied with other chores.

¶11 On January 19, 2005, Rogers was in the living room with Dan while E.K. and L.W., then four and six years old, were eating dinner in the kitchen with Maggie. Without any prompting or inquiry, E.K. stood up and told Maggie, "Rusty does this," and

stuck her hand inside her pants, touching her vaginal area. When Maggie asked E.K. to explain what Rogers had done, E.K. reiterated that "Rusty touches me and [L.W.] on our potty," and put her hand in her pants to demonstrate again. Later that evening after Rogers had left, L.W. also confirmed to Maggie that Rogers had put his hand in her and E.K.'s pants. Both girls indicated that Rogers had done so multiple times. Maggie then contacted the Bozeman Police Department.

¶12     On January 25, 2005, Bozeman Police Detective Brandon Olson separately interviewed Maggie, E.K., and L.W. Detective Olson videotaped his interviews with E.K. and L.W., and allowed the girls to use gingerbread drawings to demonstrate what Rogers had done to them. Detective Olson then conducted a video recorded interview with Rogers, during which Rogers stated that his hand might have accidentally slipped between the girls' legs and landed on their crotch. However, Rogers denied that he had groped the children or had any interest in young girls.

¶13     Both E.K. and L.W. testified at trial. E.K. identified Rogers from the witness stand and stated that he had, on multiple occasions, touched the place that "pee" came from. L.W. also identified Rogers and stated that he had touched her and her sister "in a private spot" three times, which she identified as the place that pee comes out when she goes to the bathroom. Both girls testified that when Rogers touched them, his hand was under their clothes and underwear.

¶14     At the close of the State's case-in-chief, Rogers' counsel moved the District Court for a directed verdict. Defense counsel argued that the State failed to establish that Rogers had touched the girls for the purpose of sexual gratification, and therefore failed

7

to prove that element of the sexual assault charge. The State opposed the motion, arguing that sufficient evidence was presented from which the jury could infer Rogers' mental state. The District Court denied Rogers' motion for a directed verdict, and the defense presented its case-in-chief.

¶15 After the jury convicted Rogers of both counts, the District Court ordered Rogers to undergo a psychosexual evaluation prior to sentencing, as required by § 46-18-111(1), MCA. Fred Lemons (Lemons) conducted the psychosexual evaluation, during which Rogers repeatedly refused to answer questions, invoking his Fifth Amendment right against self-incrimination. Rogers was only minimally cooperative when asked non-incriminating questions as well. Lemons ultimately concluded there were no treatment options available to Rogers within the community, and recommended that Rogers complete Phases I and II of the sex offender program at Montana State Prison.

¶16 The District Court conducted a sentencing hearing on January 24, 2006. Defense counsel recommended the District Court impose a ten-year commitment to the Department of Corrections, with Rogers' entire sentence deferred because Lemons characterized Rogers as a Level I, low risk offender. The State recommended a sentence of twenty years in prison with ten years suspended based, in part, on Lemons' assessment that Rogers was not amenable to treatment in a community setting. The District Court sentenced Rogers to twenty-year concurrent prison terms on both counts, with ten years suspended.

¶17 The District Court based its sentence on a number of factors, including the serious nature of Rogers' crimes, the ages and number of the victims involved, the

considerations submitted in testimony at the sentencing hearing, the State's and defense counsel's recommendations, the presentence investigation report, and Lemons' psychosexual evaluation of Rogers. The District Court ultimately concluded that the safety of the victims and the community, as well as the lack of treatment options available in the community, required that Rogers be incarcerated in Montana State Prison.

## STANDARDS OF REVIEW

¶18 We review denial of a challenge to dismiss a juror for cause for abuse of discretion. *State v. Richeson*, 2004 MT 113, ¶ 14, 321 Mont. 126, ¶ 14, 89 P.3d 958, ¶ 14. "Abuse of discretion occurs if a court fails to excuse a prospective juror if actual bias is discovered during voir dire." *Richeson*, ¶ 16 (citation omitted).

¶19 We review denial of a motion for a directed verdict of acquittal *de novo*. *State v. Swann*, 2007 MT 126, ¶ 19, 337 Mont. 326, ¶ 19, 160 P.3d 511, ¶ 19. "A directed verdict is only appropriate if, viewing the evidence in a light most favorable to the prosecution, there is no evidence upon which a rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Swann*, ¶ 16 (citations omitted).

¶20 We review a criminal sentence for legality only. Thus, our review is confined to whether the sentence is within the parameters provided by statute. *State v. Legg*, 2004 MT 26, ¶ 24, 319 Mont. 362, ¶ 24, 84 P.3d 648, ¶ 24 (citation omitted). When the issue on appeal concerns whether the defendant's constitutional rights were violated at sentencing, the question is a matter of law which we review *de novo*. *Legg*, ¶ 24.

**DISCUSSION**

¶21     *Did the District Court abuse its discretion by denying Rogers' challenge of Juror Welter for cause?*

¶22     Rogers asserts that the District Court erred by denying his challenge of Juror Welter for cause, and points to several of Welter's responses during voir dire which indicated that Welter was concerned whether he could be impartial.  The State argues that mere hesitancy or concern about one's ability to be impartial does not in and of itself render a potential juror subject to a challenge for cause.  We agree that Juror Welter's responses as a whole establish that he neither had a state of mind indicating actual bias nor a substantial impairment rendering him unable to act impartially.

¶23     Dismissal for cause is favored when a serious question arises about a juror's ability to be fair and impartial.  *State v. Golie*, 2006 MT 91, ¶ 8, 332 Mont. 69, ¶ 8, 134 P.3d 95, ¶ 8 (citing *Richeson*, ¶ 14).  In determining whether to dismiss a juror for cause, district courts are guided by § 46-16-115(2), MCA.  One specified basis for dismissal occurs where a juror has "a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party."  Section 46-16-115(2)(j), MCA.  A challenge for cause under § 46-16-115(2)(j), MCA, must be analyzed with reference to the aforementioned statutory language and the totality of the circumstances.  *State v. Heath*, 2004 MT 58, ¶ 16, 320 Mont. 211, ¶ 16, 89 P.3d 947, ¶ 16.

¶24     We recently held in *State v. Heath*, under similar circumstances, that the District Court did not abuse its discretion when it denied two challenges for cause, thereby

requiring the defendant to use his peremptory challenges. In that case, the defendant was charged with sexual intercourse without consent. During voir dire, one of the prospective jurors, Juror Caldwell, stated that she had volunteered as a rape survivor advocate in college, and also that her ex-boyfriend had stalked her. *Heath*, ¶ 17. Upon questioning by defense counsel, Caldwell admitted that another juror probably could be more impartial, and that she might not be the best juror for the case. *Heath*, ¶ 25. However, questioning also revealed that Caldwell would be able to look at the facts objectively, that her experience would not affect her judgment, and that she could set aside her prior experiences. *Heath*, ¶ 25. Moreover, Caldwell's responses indicated that her familiarity with sex crime victims was not unique, and that she could follow the law as given to her by the district court. *Heath*, ¶¶ 27, 29. In addition, because Caldwell's stalking experience had been classified as a "property offense," and was thus dissimilar from the rape charges that would be presented at trial, we held there was insufficient evidence that Caldwell had an improper state of mind or was biased. *Heath*, ¶¶ 34-35.

¶25 Similarly, in the present case Juror Welter ultimately demonstrated that he did not have an improper state of mind, and no serious question existed in that regard. Juror Welter's feelings regarding sexual assault are common among parents, and the fact that he had children of his own was by no means unique among other prospective jurors. Despite his initial response, Juror Welter's subsequent responses indicated that he was unbiased and impartial. For example, Juror Welter acknowledged that he would have to hear all of the evidence before he could conclude that Rogers was guilty. Juror Welter also admitted that just because Rogers was the defendant, Rogers was not necessarily

11

guilty of something, and also acknowledged that kids are more susceptible to suggestion than adults and must be scrutinized. And finally, Juror Welter ultimately recognized that his ability to sit on the jury would not be impaired "at all, in any way, by [his] belief about sexual assault crimes."

¶26    Under the totality of the circumstances, Juror Welter's responses indicated neither a "state of mind" affecting his ability to be fair and impartial, nor a "serious question" in that regard. Accordingly, we hold that the District Court did not abuse its discretion in denying Rogers' motion to remove Juror Welter for cause.

¶27    *Did the District Court err when it denied Rogers' motion for a directed verdict?*

¶28    A person commits the offense of sexual assault if he knowingly subjects another person to any sexual contact without consent. Section 45-5-502(1), MCA. "Sexual contact" is defined as "touching of the sexual or other intimate parts of the person of another . . . in order to knowingly or purposely . . . arouse or gratify the sexual response or desire of either party." Section 45-2-101(67), MCA. Any consent to sexual contact is ineffective if the victim is under fourteen and the offender is three or more years older than the victim. Section 45-5-502(5)(b), MCA.

¶29    On appeal, Rogers argues that the District Court erred when it denied his motion for a directed verdict. Rogers argues that the State failed to present sufficient evidence that he touched E.K. and L.W. for the purpose of arousing or gratifying his sexual response or desire. Rogers claims the only evidence presented regarding his mental state was the video statement he gave to the Bozeman Police Department in which he denied having any sexual interest in girls, and L.W.'s statement to Detective Olson that Rogers'

12

lap felt "soft" when she sat in it, implying that Rogers did not have an erection. Because the State did not present direct conflicting evidence regarding his mental state, Rogers argues the evidence showed that he did not receive any gratification from touching the girls.

¶30 This Court has previously held that the State need not prove direct evidence of arousal, or intent to be aroused, in order to meet its burden of proving the "sexual contact" element of sexual assault. "[I]t is well-settled that the jury may infer intent of sexual arousal from the defendant's acts." *State v. Skinner*, 2007 MT 175, ¶ 24, 338 Mont. 197, ¶ 24, 163 P.3d 399, ¶ 24 (citation omitted). In *Skinner*, the defendant claimed the State failed to meet the "intent" prong of "sexual contact" despite proving that he had placed his hand down the back of his eleven-year-old daughter's underwear while she was asleep. *Skinner*, ¶ 23. We held that, "while there is no direct evidence of arousal, such as an erection, there is sufficient circumstantial evidence for the jury to infer arousal, or that the purpose of Skinner's act was arousal. Skinner was not casually touching T.D. during an ordinary act." *Skinner*, ¶ 24.

¶31 Rogers' argument is indistinguishable. While the State may not have presented direct evidence that Rogers was aroused, a jury could infer that Rogers' multiple acts of putting his hand inside E.K.'s and L.W.'s underwear was for the purpose of arousal. As in *Skinner*, Rogers was not casually touching E.K. or L.W. during an ordinary act when, on more than one occasion with both girls, he placed his hand on their vaginas. Viewing the evidence in a light most favorable to the prosecution, there was sufficient evidence upon which a rational trier of fact could have found that Rogers made "sexual contact"

13

with E.K. and L.W. Consequently, the District Court did not err in denying Rogers' motion for a directed verdict.

¶32     *Did the District Court err by giving the jury a "dynamite" instruction?*[1]

¶33     Rogers' third allegation of error is that the District Court erred when it allegedly instructed the jury, at 10 p.m. on its first day of deliberation, that it would only have an additional half-hour to reach a decision, and if it could not, it would have to reconvene in the morning. Rogers refers this Court to its holding in *State v. Randall*, 137 Mont. 534, 353 P.2d 1054 (1960), in which we held it was error for the district court to instruct minority members of a jury to give further consideration to the majority members' view, thereby suggesting that the minority members "ought to surrender their own convictions and follow the majority." *Randall*, 137 Mont. at 542, 353 P.2d at 1058. According to Rogers, the given instruction had the effect of pressuring any juror not in agreement with the majority to change his or her opinion, so as to avoid inconveniencing the jury as a whole. However, we need not reach this issue today.

¶34     As noted by the State, Rogers fails to direct the Court to any record of this deliberation instruction in the transcript or in the District Court's minutes, and thus has failed to document the issue for appeal. As the appellant, it is Rogers' duty to present us with a record sufficient to enable us to rule on the issue raised. M. R. App. P. 9(a). An

---

[1] A "dynamite" instruction is also called an *Allen*-type instruction, and is so named for *Allen v. U.S.*, 164 U.S. 492, 17 S. Ct. 154 (1896), in which the United States Supreme Court approved of a deliberation instruction encouraging each juror to listen with deference to other jurors, and to distrust his own judgment if he found a large majority of the jury taking a different view. This Court took the opposite view in *State v. Randall*, 137 Mont. 534, 353 P.2d 1054 (1960).

appellant cannot meet the burden of establishing error without citations to the record and to relevant authorities. *City of Billings v. Peterson*, 2004 MT 232, ¶ 36, 322 Mont. 444, ¶ 36, 97 P.3d 532, ¶ 36; M. R. App. P. 23(a)(4). It is also the appellant's duty to ensure that the appendix contains any relevant given or refused jury instruction. M. R. App. P. 25(b)(2). Rogers provides no citations to the record, and we find nothing in the record supporting Rogers' contention.

¶35 Rogers' reply brief indicates that he has filed a motion before the District Court, pursuant to M. R. App. P. 9(f), for the record to be supplemented. However, that request was made to the District Court on September 25, 2006, and the record is still devoid of the allegedly erroneous instruction. Because the record does not support Rogers' contention, we affirm the District Court.

¶36 *Did the District Court impose an illegal sentence by failing to apply the statutory exception to the mandatory minimum sentence, and by sentencing Rogers based upon his lack of participation in a court-ordered psychosexual evaluation?*

¶37 On appeal, Rogers makes two arguments against the sentence imposed by the District Court. First, Rogers argues he satisfied the eligibility criteria for an exception to the mandatory minimum sentencing statute, and therefore should have received a deferred sentence. Second, Rogers argues he had a Fifth Amendment right to decline to participate in the psychosexual evaluation, and that such refusal should not have been considered in determining his sentence. We find no error in the court's sentence.

15

## I. Mandatory Minimum Sentence Exceptions

¶38    Section 45-5-502(3), MCA, provides for a mandatory minimum prison sentence of four years, or a maximum of 100 years, upon conviction of sexual assault on a minor. However, § 46-18-222(6), MCA, provides for an exception to that mandatory minimum sentence if the District Court "determines that treatment of the offender in a local community affords a better opportunity for rehabilitation of the offender and for the ultimate protection of the victim and society . . . ." Rogers argues the District Court should have applied this exception because, among other things, Rogers' history of sexual assault was limited to the present offenses, which he argues were relatively minor, and for which Lemons only classified Rogers as a Level I sex offender. Rogers also points out that none of Lemons' conclusions came from the two tests in which Rogers raised his Fifth Amendment right against self-incrimination, and from which the State characterized Rogers as uncooperative. Therefore, Rogers argues, the exception to the mandatory minimum sentence applies to him.

¶39    Despite Rogers' arguments, this Court has "consistently held that the exceptions set forth at § 46-18-222, MCA, do not apply in cases in which the district court sentences the offender to more than the minimum sentence." *Legg*, ¶ 49 (citations omitted). In other words, the exceptions only apply if the district court is predisposed to sentencing the defendant to the mandatory minimum sentence. *State v. Zabawa*, 279 Mont. 307, 317, 928 P.2d 151, 157 (1996). In this case, the mandatory minimum sentence was four years imprisonment. Section 46-18-222(3), MCA. The District Court sentenced Rogers to twenty years imprisonment, ten suspended. Thus, the District Court sentenced Rogers

to more than the minimum sentence, making the exception for which Rogers argues inapplicable. Moreover, the State correctly points out that even if Rogers had received the minimum sentence, he presented no evidence that he could be better treated or rehabilitated in the community. In fact, the opposite was true: the District Court accepted Lemons' conclusion that there were no treatment options available to Rogers within the community.

## II. Participation in Psychosexual Evaluation

¶40 Rogers' second argument is that his refusal to cooperate at the presentence psychosexual evaluation was used against him in violation of the Fifth Amendment. Rogers argues that Lemons recommended, and the District Court imposed, a harsher sentence solely because Rogers refused to admit responsibility or express remorse at the psychosexual evaluation.

¶41 Rogers' assertion is not supported by the record. As a preliminary matter, Rogers' lack of cooperation was not limited to only those instances in which he could have incriminated himself. Rather, Lemons noted that Rogers was extremely closed and defensive in providing a social and sexual history, and Rogers was only minimally cooperative in completing probation and parole's presentence investigation report. This lack of cooperation does not fall within the Fifth Amendment umbrella.

¶42 In accordance with § 46-18-115(6), MCA, the District Court articulated the reasons for its sentence. As discussed previously, the District Court first noted that the mandatory minimum sentence was four years for a violation of § 45-5-502(3), MCA, and that the exception was inapplicable because no treatment options were available within

17

the community which would address Rogers' issues of sexual abuse. The District Court observed that, contrary to Rogers' argument that Lemons recommended a harsher sentence based solely upon his refusal to incriminate himself, Lemons' recommendation for treatment was based on an interview with Rogers, administration of a number of tests and screening tools, and a review of the background information and court documents related to the specific offense. In fact, Lemons did not comment on Rogers' refusal to respond to questions posed to him during testing, and the District Court correctly noted that there was "no indication that the failure to complete these tests in any way affected Mr. Lemons [sic] recommendation for treatment."

¶43     The District Court summarized the reasons for its sentence as follows:

> The correctional policy to provide an opportunity for rehabilitation and reintegration of a defendant into the community has to be balanced against the issue of public safety. Based on the serious nature of these crimes, the ages and number of victims affected, the considerations submitted in the testimony presented at the sentencing hearing, and [sic] the recommendations of the State and Defense Counsel, the Pre-Sentence Investigation Report and the letters attached to that Report, the evaluation of Mr. Lemons, and the memoranda provided by Counsel, the Court finds that the safety of the victims and the community require that the defendant be incarcerated. Also, in order to protect the public safety, as well as to provide for rehabilitation, the Court finds that sex offender treatment has to be required, and it is not available outside of the prison in this case. In order to ensure that sex offender treatment is completed, the defendant will be restricted from parole until Phases I and II of the sex offender treatment program at the prison have been successfully completed . . . .

The District Court's considerations in its "Reasons for Sentence" were many, and, notably, did not even reference Rogers' refusal to answer incriminating questions during the psychosexual evaluation. Because nothing in the record supports Rogers' claim that his refusal served as a basis for his sentence, we decline to address Rogers' argument that

18

the Fifth Amendment permits a defendant to refuse to participate in a court-ordered psychosexual evaluation. The District Court's sentence was within the parameters provided by statute, and is therefore affirmed.


/S/ JIM RICE


We concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ BRIAN MORRIS


Justice James C. Nelson concurs.

¶44 I concur in the Court's Opinion. I write separately as to the juror voir dire issue, Issue 1, only to clarify my vote to affirm.

¶45 All things being equal, I would have voted to reverse on this issue. In my view, Welter's responses quoted in the Court's Opinion demonstrated that he had a state of mind in reference to the case [and to Rogers] that would prevent him from acting with entire impartiality and without prejudice to Rogers' substantial rights. Section 46-16-115(2)(j), MCA. *State v. Golie,* 2006 MT 91, ¶ 8, 332 Mont. 69, ¶ 8, 134 P.3d 95, ¶ 8. Moreover, at least from the colloquy quoted, I believe that the voir dire examination did raise a serious question about Welter's ability to be fair and impartial. *State v. Richeson,* 2004 MT 113, ¶ 14, 321 Mont. 126, ¶ 14, 89 P.3d 958, ¶ 14.

¶46 That said, following the trial court's denial of defense counsel's challenge to Welter for cause and the judge's admonition that she needed to "establish more"—in light of the fact that the court would be instructing the jurors on, among other things, the presumption of innocence and the State's burden of proof—counsel stated to Welter:

> Ms. Marshall: *I'm going to stick with you.* Do you think that your ability to sit on the jury would be impaired at all, in any way, by your belief about sexual assault crimes?
> Mr. Welter: At this point, I don't think so.
> Ms. Marshall: Okay. All right. I'll pick on somebody else, thank you. [Emphasis added.]

Defense counsel did not thereafter renew her challenge and, ultimately, passed the panel for cause.

¶47 By determining to "stick with" Welter and by not renewing her challenge for cause, I conclude that defense counsel withdrew her challenge. Whether that was a wise decision is not before us. However, I agree with our determination to affirm as to Issue 1 because the challenge for cause was withdrawn.

/S/ JAMES C. NELSON