FILED

02/13/2018

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0362

DA 16-0362

IN THE SUPREME COURT OF THE STATE OF MONTANA

2018 MT 26

_____

STATE OF MONTANA,

       Plaintiff and Appellee,

  v.

CLAYTON RUSSELL,

       Defendant and Appellant.

_____

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                    In and For the County of Gallatin, Cause No. DC 15-35A
                    Honorable Holly Brown, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

              Chad Wright, Appellate Defender, Koan Mercer, Assistant Appellate Defender, Helena, Montana

       For Appellee:

              Timothy C. Fox, Montana Attorney General, Ryan Aikin, Assistant Attorney General, Helena, Montana

              Martin D. Lambert, Gallatin County Attorney, Eric N. Kitzmiller, Chief Deputy County Attorney, Bozeman, Montana

_____

Submitted on Briefs:  November 15, 2017
Decided:  February 13, 2018

Filed:

_____
                  Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1    Defendant Clayton Russell ("Russell") appeals from the jury verdict and sentence of the Eighteenth Judicial District, Gallatin County, for driving under the influence of alcohol (DUI), fourth or subsequent offense, a felony, in violation of § 61-8-401, MCA.

¶2    We address the following issue on appeal:

*Whether the District Court erred by denying Russell's for-cause challenge to a prospective juror.*

¶3    We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶4    On February 3, 2015, the State charged Russell with felony DUI.[1]  During voir dire, Russell's defense counsel, John Hud, questioned jurors individually.  One prospective juror, Kaylie Utter ("Utter"), stated that she had "a couple of experiences that might influence [her] opinions" in this case.  Utter explained that a close friend died in a drunk driving accident, and that her son-in-law was recently involved in a drunk driving accident.  While Utter could not definitively answer whether those experiences would impact her ability to be fair or impartial, she admitted that it "definitely affects [her] opinions."  When asked if she was more inclined to believe a police officer's testimony and find Russell guilty, Utter stated, "[t]hat could be; I can't say for sure but it's possible."  In response to follow-up questions regarding her ability to neutrally evaluate potential evidence, Utter answered, "yes" when the prosecutor asked whether her life experiences would cause her

---

[1] Russell was also charged with two misdemeanor traffic offenses; he pled guilty to these offenses on February 25, 2016, the first day of his DUI trial.

to evaluate the evidence in a certain way. As to whether Russell's refusal to submit to a breath test in and of itself results in an assumption of guilt, Utter stated that she might infer guilt from a defendant's refusal to submit to a breath test. Russell challenged Utter for cause, and the District Court excused Utter "based on the experiences that she's had personally and the indication that those experiences would maybe influence her decision."

¶5      Upon Utter being excused, the District Court called Prospective Juror Donald Platisha ("Platisha"), who immediately stated that he "might be in the same position as the last juror." In a follow-up question, Platisha explained that his sister was injured, and his brother-in-law killed, by a drunk driver. When pressed directly as to whether he thought his experiences would make it hard for him to be a fair in a DUI case, Platisha stated, "I'm like [Utter]. I don't know." Defense Counsel Hud followed up:

> Defense Counsel: Okay. But even with the presumption of innocence, Mr. Russell and the defense would have a hard time convincing you of his position in this case; is that fair?
>
> Platisha: I don't believe that's true, no.
>
> Defense Counsel: Okay. Well, we have a situation here where Mr. Russell was arrested so a police officer believes something was wrong. The police officer's report was sent to the prosecutor and[,] based on the report, charges were filed against him. And now he's sitting here at trial. Would it be fair to say in your mind something must be serious here or there must be some evidence here or he wouldn't be here?
>
> Platisha: I don't know. I haven't heard that evidence so I guess I can't answer that.

3

.   .   .

Defense Counsel: If you had a hunch the guy's guilty or maybe the guy's guilty, would that have been enough for you?

Platisha: No.

¶6     Platisha stated that he had "quite a few" experiences involving drunk drivers and agreed that he would feel "more comfortable" sitting on another type of criminal case where he didn't have so much personal experience.

¶7     The State then followed up with a series of questions of Platisha:

State Counsel: What does fairness mean to you?

.   .   .

Platisha: I think it's the correct evaluation of the information that you have, you make the correct judgment.

State Counsel: And so you wouldn't say if the defendant was an African American just because of his skin color you couldn't be fair?

Platisha: I could not say; right.

State Counsel: Okay.  Just because someone is charged with a criminal offense doesn't mean you can't be fair, does it?

Platisha: No, it doesn't.

State Counsel: And just because you have a certain set of life experiences . . . doesn't mean you can't be fair in evaluating the evidence that's presented, does it?

Platisha: No, it doesn't.

State Counsel: And you believe you can be fair in this case, can't you?

Platisha: I believe I could be.

¶8     Russell challenged Platisha for cause. The District Court denied the challenge after determining that Platisha "indicated that even with his life experiences[,] which he has discussed with us, he is still able to be fair in the case . . ." and asking Platisha, "is that correct, Mr. Platisha?" Platisha answered in the affirmative. Following the denial of the for-cause challenge, Russell used his first peremptory challenge to excuse Platisha and went on to use all his remaining juror challenges.

¶9     On February 26, 2016, after a two-day trial, the impaneled jury found Russell guilty of Felony DUI. On April 27, 2016, the District Court sentenced Russell to thirteen months with the Department of Corrections for placement in a residential alcohol treatment program and four years suspended to be served consecutively. Russell appeals the District Court's denial of his for-cause challenge of Platisha.

## STANDARDS OF REVIEW

¶10     We review denial of a challenge to dismiss a juror for cause for abuse of discretion. *State v. Richeson*, 2004 MT 113, ¶ 14, 321 Mont. 126, 89 P.3d 958; *see also State v. Grant*, 2011 MT 81, ¶ 8, 360 Mont. 127, 252 P.3d 193. If a district court abuses its discretion by denying a legitimate for-cause challenge, the error is structural and requires automatic reversal. *State v. Good*, 2002 MT 59, ¶¶ 62–63, 309 Mont. 113, 43 P.3d 948.

## DISCUSSION

¶11     *Whether the District Court erred by denying Russell's for-cause challenge to a prospective juror.*

¶12     A criminal defendant's fundamental right to an impartial jury is guaranteed by the United States and Montana Constitutions. U.S. Const. amend VI; Mont. Const. art. II, § 24;

5

*State v. Allen*, 2010 MT 214, ¶ 25, 357 Mont. 495, 241 P.3d 1045; *State v. Hausauer*, 2006 MT 336, ¶ 20, 335 Mont. 137, 149 P.3d 895.  Section 46-16-115(2)(j), MCA, provides a prospective juror may be excused for cause if he or she has "a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party."

¶13    Merely having common experiences relative to the case at hand does not render a juror impartial or biased.  *State v. Rogers*, 2007 MT 227, ¶¶ 8–9, 25, 339 Mont. 132, 168 P.3d 669 (discussing how a juror's experience of having his own children was by no means unique among other prospective jurors and did not disqualify him from sitting on a jury in a child sex abuse case).  Further, if the prospective juror simply "expresses concern about impartiality but believes he can fairly weigh the evidence, the court is not required to remove the juror."  *State v. Normandy*, 2008 MT 437, ¶ 22, 347 Mont. 505, 198 P.3d 834.  We recognize that "[i]n reality, few people are entirely impartial regarding criminal matters. . . ."  *Allen*, ¶ 26.

¶14    Prospective jurors should be disqualified based on their prejudices only when they have formed "fixed opinions on the guilt or innocence of the defendant which they would not be able to lay aside and render a verdict based solely on evidence presented in court," *Great Falls Tribune v. Dist. Court of Eighth Judicial Dist.*, 186 Mont. 433, 439–40, 608 P.2d 116, 120 (1980); *see also State v. Falls Down*, 2003 MT 300, ¶¶ 23, 27, 318 Mont. 219, 79 P.3d 219, or when a serious question arises about a juror's ability to be fair and impartial, *State v. Golie*, 2006 MT 91, ¶ 8, 332 Mont. 69, 134 P.3d 95; *State v. Cudd*, 2014 MT 140, ¶ 6, 375 Mont. 215, 326 P.3d 417.  In determining whether a serious question is

raised, a district court should review the totality of a prospective juror's voir dire responses, *Allen*, ¶ 26; *Golie*, ¶ 10; *State v. Heath*, 2004 MT 58, ¶ 8, 320 Mont. 211, 89 P.3d 947, and give more weight to spontaneous statements than "coaxed recantations elicited by counsel because spontaneous statements are most likely to be reliable and honest," *State v. Jay*, 2013 MT 79, ¶ 19, 369 Mont. 332, 298 P.3d 396 (internal citations omitted); *see also Cudd*, ¶ 8; *Falls Down*, ¶¶ 20-21 (holding that a district court did not abuse its discretion when it denied four challenges for cause, in part because the potential jurors' initial responses "prove that they could be fair and impartial" and it was "only after . . . manipulation of the potential jurors' initial responses" that their responses became "unclear and seemingly biased. . . .").

¶15 Finally, it is not the role of the court or counsel to rehabilitate jurors whose spontaneous responses during voir dire expose a serious question about their ability to be fair and impartial. *See State v. DeVore*, 1998 MT 340, ¶ 28, 292 Mont. 325, 972 P.2d 816, *overruled in part on other grounds by Good*, ¶¶ 40–41; *see also State v. Brown*, 1999 MT 339, ¶ 22, 297 Mont. 427, 993 P.2d 672.

¶16 We previously held that a district court did not abuse its discretion when it denied a for-cause challenge to a prospective juror in a case involving sexual intercourse without consent when the juror indicated that she volunteered as a rape survivor advocate and was a victim of stalking. *Heath*, ¶¶ 17, 21, 27, 29, 36. The juror stated that while she felt she could put aside her own prejudices, she understood that if she were in the defendant's position she probably would not want someone on the jury with her experience. *Heath*, ¶ 21. However, unlike other prospective jurors who were struck for cause after describing

7

first hand experiences with very similar crimes to the one charged, were visibly emotionally distressed at the prospect of serving on a jury for a crime like this, and openly stated they would have difficulty weighing evidence objectively, this prospective juror's experience and demeanor did not constitute circumstantial evidence showing she could not act with impartiality and without prejudice in the case. *Heath*, ¶¶ 33–34.

¶17 Russell argues that Platisha's life experiences, his own admission of doubt regarding his ability to be impartial, and comparing himself to another juror who had been removed for cause raised a serious question about Platisha's ability to hear Russell's case with impartiality. Russell also argues that the State's "heavy-handed efforts" to rehabilitate Platisha violated Russell's constitutional and statutory right to an impartial juror and amounted to structural error mandating reversal. We disagree.

¶18 Although Platisha disclosed similar experiences to Russell's case, he did not reveal bias or impartiality. *See Rogers*, ¶ 25; § 46-16-115(2)(j), MCA. Platisha initially expressed concern about his own impartiality and told the District Court that he "might be in the same position as the last juror," *see Normandy*, ¶ 22, but he did not reveal a fixed opinion as to Russell's guilt or innocence or the outcome of the proceedings, *see Great Falls Tribune*, 186 Mont. at 439–40, 608 P.2d at 120. Unlike Utter, who admitted that her experiences "definitely affect[ed] [her] opinions," and that she felt the refusal to submit to a breath test inferred guilt, Platisha did not express an opinion as to Russell's guilt or innocence, explicitly stating, "I don't know. I haven't heard the evidence so I guess I can't answer that. . . ." and that merely having a "hunch" as to whether Russell was guilty would be

insufficient to convict him. *See Rogers*, ¶ 25; *see also Great Falls Tribune*, 186 Mont. at 439–40, 608 P.2d at 120.

¶19 Similar to the juror in *Heath* who had personal experiences pertinent to the case at bar, Platisha disclosed his experiences and recognized their relevance, but affirmed that he could be fair. *See Heath*, ¶¶ 21, 23–24; *see also Normandy*, ¶ 22. Also like the juror in *Heath*, who understood a defendant might find her ill-suited to his case, Platisha stated that he might be more "comfortable" sitting as a juror on another type of case. *See Heath*, ¶ 21. Still, his experiences and demeanor did not circumstantially show an inability to act with impartiality and without prejudice in this case. *See Heath*, ¶¶ 33–35.

¶20 The State's line of rehabilitative questioning delving into Platisha's definition of "fairness" was improper. *See DeVore*, ¶ 28 ("coaxed recantations of admissions of bias are merely fodder for appeal and ultimately the source of major expense and inconvenience. . . ."). However, it was also unnecessary. Platisha had already demonstrated his ability to remain neutral prior to the State's series of leading questions. Considering the totality of Platisha's responses, *see Heath*, ¶ 18, none of Platisha's initial responses, or those following the State's unnecessary rehabilitation attempts, evince bias or indicate a state of mind that would disqualify Platisha as a juror, *see Allen*, ¶ 26; *see also Falls Down*, ¶¶ 20-21. Nothing else in the record indicates that Platisha would have acted with bias or prejudice to impair Russell's substantial rights had he been seated on the jury. *See* § 46-16-115(2)(j), MCA. The District Court did not abuse its discretion in denying Russell's for-cause challenge of Platisha. *See Richeson*, ¶ 14.

9

**CONCLUSION**

¶21    The District Court did not abuse its discretion in denying Russell's for-cause challenge to a prospective juror.  We affirm.

__/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE