FILED

06/23/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0664

DA 18-0664

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 162N

CLARENCE EDWARD CHAMPAGNE,

      Petitioner and Appellant,

    v.

STATE OF MONTANA,

      Respondent and Appellee.

APPEAL FROM:    District Court of the Twelfth Judicial District,
In and For the County of Hill, Cause No. DV 13-184
Honorable Robert G. Olson, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

        Samir F. Aarab, Boland Aarab PLLP, Great Falls, Montana

      For Appellee:

        Timothy C. Fox, Montana Attorney General, Michael P. Dougherty,
Assistant Attorney General, Helena, Montana

        Karen Alley, Hill County Attorney, Havre, Montana

Submitted on Briefs:  April 22, 2020

Decided:  June 23, 2020

Filed:

                                      Clerk

Justice Dirk Sandefur delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, we decide this case by memorandum opinion. It shall not be cited and does not serve as precedent. The case title, cause number, and disposition will be included in our quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Clarence Edward Champagne (Champagne) appeals the judgment of the Montana Twelfth Judicial District Court, Hill County, denying his petition for postconviction relief on the offense of sexual assault, a felony. We affirm.

¶3    Following a four day trial in August 2011, a jury returned a verdict adjudicating Champagne guilty of sexually assaulting the ten year-old granddaughter of his ex-wife. Over a year earlier, upon notice of selection for non-specific jury service, a jury venireman who was a serving United States Border Patrol agent submitted a sworn request for permanent excusal from jury service on the asserted ground that he was "a federal law enforcement officer and feel I may be biased in a criminal trial." Upon denying the requested excusal, the District Court advised the agent of the opportunity to "make your comments to the attorneys at trial" when summoned to serve in a particular case and that the court would then "consider a[ny] request outlining your circumstances."

¶4    On or about June 7, 2011, upon being summoned for jury service, the Border Patrol agent returned the standard form, non-case-specific juror qualification questionnaire form sent to prospective jurors for the Champagne trial. *Inter alia*, the agent's answers disclosed

that he was employed by the U.S. Border Patrol and had been previously involved in "a lawsuit" incident to his Border Patrol employment.

¶5    On or about July 21, 2011, the agent returned answers to a supplemental questionnaire setting forth 38 questions in specific regard to the upcoming Champagne trial. *Inter alia*, the agent's answers again disclosed his employment as a Border Patrol agent and further unequivocally stated that he would have no problem following the court's instructions regarding the presumption of innocence or the State's burden of proof. His answers stated that he understood that the defendant did not have to prove his innocence, his failure to testify would not "affect [the agent's] determination of the case," the agent had no "religious, moral, or ethical beliefs that would prevent [him] from . . . [serving] in a criminal case and rendering a fair verdict," and there was no "other reason [the agent] could not be a fair juror in a criminal case." The agent stated that there was: (1) nothing else that he thought "should be brought to the court's attention that might affect [his] ability to . . . [be] fair and impartial"; (2) no other "matter not covered by th[e] questionnaire that the attorneys or court would want to know when considering [him] as a juror in this case"; (3) no "reason [he] could not be fair to [either party] in th[e] case"; and (4) no "answer . . . in th[e] questionnaire that [he] would prefer to discuss [privately] with the judge and attorneys."

¶6    During voir dire, the Border Patrol agent similarly gave no indication of any bias or prejudice against Champagne, sex case defendants, or criminal defendants in general. In response to the State's query as to whether there was anything about the case that made

3

him "want to run for the hills," the agent replied, "[n]ot really." Defense counsel did not specifically question the agent about his law enforcement background or any related potential for general or specific bias or prejudice in this case.

¶7 Prior to exercise of peremptory challenges, the court allowed defense counsel to conduct individual voir dire of a number of potential jurors who may have heard a reported lunch break statement by another referencing his or her jury duty and stating that he or she thought Champagne was "guilty of child molesting." During his individual voir dire, the Border Patrol agent gave the following answers, *inter alia*:

[Agent]: It was mentioned to me in passing over the lunch break, or whatever that somebody had checked on the internet and said there might have possibly been a previous assault conviction. So I figured that it was pertinent to what you were asking. So I thought that I would bring that up. . . .

[State]: So you haven't done any independent investigation and found any information?

[Agent]: No.

[State]: Looked on line, checked court records, any of that kind of thing?

[Agent]: Negative.

[State]: So at this point, you don't have any, you have no idea whether that's accurate or inaccurate information?

[Agent]: Like I said, it was just mentioned to me in passing during lunch.

[State]: Is that mentioned to you in passing at lunch going to affect your ability to be fair to both the State and the Defendant today?

[Agent]: No, not really.

.  .  .

4

[Defense counsel]: So, after having heard that, you're not making any assumption about Mr. Champagne?

[Agent]: No.

After the parties exercised their respective peremptory challenges, the Border Patrol agent remained and was seated as the second juror on the final jury panel.

¶8 Following closing arguments, the jury quickly returned a guilty verdict. Champagne timely appealed. We affirmed the conviction but remanded for a proper restitution determination. *State v. Champagne*, 2013 MT 190, 371 Mont. 35, 305 P.3d 61. Champagne later filed a pro se petition for postconviction relief on the asserted ground that he received ineffective assistance of counsel (IAC) in violation of the United States and Montana Constitutions. He claimed that defense counsel was ineffective based on the failure to properly investigate his case, conduct voir dire regarding the apparent bias of the Border Patrol agent, disclose a conflict of interest, and move for suppression of the adverse testimony of his ex-wife based on spousal privilege. The District Court summarily dismissed three of the asserted IAC claims as facially deficient but ordered the State to respond to the voir dire claim.

¶9 Incident to responding to Champagne's petition, the State obtained the affidavit testimony of defense counsel by court order pursuant to *In re Gilham*, 216 Mont. 279, 282, 704 P2d 1019, 1021 (1985). In his *Gilham* affidavit, defense counsel stated that he recalled that several law enforcement officers were among the Champagne jury venire and that one of them remained on the final jury. He had no specific recollection, however, as to whether

5

the remaining officer was the Border Patrol agent later at issue. Counsel stated that he similarly had no recollection as to whether he specifically examined the Border Patrol agent about potential law enforcement bias, thus assumed that he had not, and, if not, that it was a mistake not to do so. The District Court ultimately denied Champagne postconviction relief on the ground that he failed to establish either required element of an IAC claim. The court reasoned that, despite the agent's prior statement a year earlier, his more specific and unequivocal statements on the actual trial record manifested that any potential bias or prejudice "was not actually fixed" and that the agent could be a fair and impartial juror if selected to serve in the Champagne trial.

¶10 The standard of review for a denial of a petition for postconviction relief is whether the lower court's conclusions of law are correct and whether its related findings of fact are clearly erroneous in the light most favorable to the conviction. *Whitlow v. State*, 2008 MT 140, ¶ 9, 343 Mont. 90, 183 P.3d 861; *In re Jones*, 176 Mont. 412, 415, 578 P.2d 1150, 1152 (1978). However, a postconviction petition based on alleged IAC presents mixed questions of law and fact reviewed de novo. *Whitlow*, ¶ 9; *State v. Turner*, 2000 MT 270, ¶ 47, 302 Mont. 69, 12 P.3d 934. *See also Strickland v. Washington*, 466 U.S. 668, 698, 104 S. Ct. 2052, 2070 (1984).

¶11 The Sixth and Fourteenth Amendments to United States Constitution, and Article II, § 24 of the Montana Constitution, similarly guarantee criminal defendants the right to effective assistance of counsel. *Whitlow*, ¶ 10; *State v. McElveen*, 168 Mont. 500, 501-03, 544 P.2d 820, 821-22 (1975); *Strickland*, 466 U.S. at 686, 104 S. Ct. at 2063 (citing

6

*McMann v. Richardson*, 397 U.S. 759, 771 n.14, 90 S. Ct. 1441, 1449 (1970)). The performance of counsel is constitutionally ineffective only if both deficient and prejudicial. *State v. Herrman*, 2003 MT 149, ¶ 17, 316 Mont. 198, 70 P.3d 738. A performance is constitutionally deficient only if it "fell below an objective standard of reasonableness measured [by] prevailing professional norms" under the totality of the circumstances at issue. *Whitlow*, ¶ 20. *Accord Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065. A deficient performance was prejudicial only upon a showing of a reasonable probability that the outcome would have been different but for the deficient performance. *Ariegwe v. State*, 2012 MT 166, ¶¶ 15-16, 365 Mont. 505, 285 P.3d 424; *Heath v. State*, 2009 MT 7, ¶ 17, 348 Mont. 361, 202 P.3d 118; *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. The performance of counsel is presumed constitutionally effective—IAC claimants bear the heavy burden of overcoming that strong presumption. *Whitlow*, ¶¶ 20-21; *Strickland*, 466 U.S. at 689, 104 S. Ct. at 2065.

¶12 Here, Champagne asserts that defense counsel's performance was constitutionally ineffective due to failure to specifically voir dire the Border Patrol agent regarding his previously stated bias against criminal defendants and to, at least, strike him from the venire by peremptory challenge. However, as a threshold matter, Champagne has not shown that it was unreasonable under the circumstances for defense counsel either to not know about the agent's non-case related statement a year earlier or, if he knew about it, to not question him about it.

7

¶13 Moreover, if otherwise statutorily qualified to serve, a prospective juror is subject to disqualification only if he or she has formed a "fixed opinion[] on the guilt or innocence of the defendant" or the totality of his or her responses indicates a "serious question" regarding the "ability to be fair and impartial." *State v. Russell*, 2018 MT 26, ¶ 14, 390 Mont. 253, 411 P.3d 1260 (internal citations omitted). *See also* § 46-16-115(2)(j), MCA (disqualification based on "state of mind" regarding issue or party precluding "entire impartiality and without prejudice to the substantial rights"). Here, the agent's statement in a jury service excusal request a year earlier was not an unequivocal statement of a fixed bias or prejudice. On its face, it was no more than an equivocal, non-case-specific statement of possible bias against criminal defendants in general, without regard to Champagne or the nature of the allegations against him. As noted by the District Court, the agent's more recent and case-specific statements in his supplemental pretrial questionnaire unequivocally disclaimed any potential negative bias or prejudice regarding Champagne, the allegations against him, or his trial rights. The agent's subsequent record conduct and responses during voir dire likewise gave no indication of negative bias or prejudice against Champagne or any inability or unwillingness of the agent to be a fair and impartial in this case.

¶14 We recognize that, in an abundance of caution, criminal defense counsel often closely examine and peremptorily strike law enforcement officers from jury service. However, the mere fact that a prospective juror is a law enforcement officer or otherwise connected with law enforcement does not, without more, per se render that person unable

to be a fair and impartial juror in a criminal case. *State v. Deschon*, 2004 MT 32, ¶ 41, 320 Mont. 1, 85 P.3d 756 (internal citations omitted). Here, counsel's after-the-fact statement in a *Gilham* affidavit, that it was a mistake not to specifically examine the Border Patrol agent about potential law enforcement bias, is insufficient without more to render his failure to do so constitutionally deficient or prejudicial.

¶15    Under the totality of the circumstances in this case, Champagne has failed to clearly demonstrate that his counsel's failure to examine the Border Patrol agent about his earlier statement of potential bias against criminal defendants, examine him about law enforcement bias in general, or to at least peremptorily strike him was either constitutionally deficient or prejudicial. We hold that the District Court did not erroneously deny postconviction relief to Champagne.

¶16    We have determined to decide this case pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules, which provides for memorandum opinions. This appeal presents no constitutional issues, no issues of first impression, and does not establish new precedent or modify existing precedent.

¶17    Affirmed.

/S/ DIRK M. SANDEFUR

We concur:
/S/ MIKE McGRATH
/S/ BETH BAKER
/S/ JIM RICE

Justice McKinnon was the trial judge on this case prior to joining this Court and thus did not participate in this decision.

9