FILED

11/21/2023

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 21-0232

DA 21-0232

IN THE SUPREME COURT OF THE STATE OF MONTANA

2023 MT 219

STATE OF MONTANA,

      Plaintiff and Appellee,

   v.

SEAN MCKELVEY CALAHAN,

      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
In and For the County of Lewis and Clark, Cause No. ADC-2019-503
Honorable Mike Menahan, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Chad Wright, Appellate Defender, Haley Connell Jackson, Assistant
Appellate Defender, Helena, Montana

      For Appellee:

          Austin Knudsen, Montana Attorney General, Christine Hutchison,
Assistant Attorney General, Helena, Montana

          Kevin Downs, Lewis and Clark County Attorney, Ann Penner, Deputy
County Attorney, Helena, Montana

Submitted on Briefs:  September 20, 2023

Decided:  November 21, 2023

Filed:

_____
Clerk

Chief Justice Mike McGrath delivered the Opinion of the Court.

¶1    Calahan appeals a jury conviction and sentence from the First Judicial District Court of two counts of sexual assault, a felony, in violation of § 45-5-502(3), MCA. We affirm in part, reverse in part, and remand for proceedings consistent with this Opinion.

¶2    We restate the issues on appeal as follows:

*Issue One: Whether the District Court abused its discretion in refusing to grant Calahan's discovery requests following an in camera review of the victims' counseling records.*

*Issue Two: Whether the District Court abused its discretion in denying Calahan's motion to dismiss juror M.C. for cause.*

*Issue Three: Whether the District Court's written judgment must conform to Calahan's oral sentencing.*

## FACTUAL AND LEGAL BACKGROUND

¶3    Calahan was charged by information with two counts of sexual assault on November 1, 2019, after the Helena Police Department received an October 16, 2019 report that he had possibly sexually abused his stepdaughters, A.K. I and A.K. II. The same day the report was made, A.K. I and A.K. II, aged 11 and 14, provided separate and detailed accounts depicting a history of inappropriate touching by Calahan.

¶4    Calahan filed pretrial motions on August 11, 2020, for deposition of the children's therapist, Kristina Dukart, LCSW, and for the production of certain records pertaining to her visits with A.K. I and A.K. II. Calahan filed the motions based, in part, on a letter that Dukart sent to the children's mother, Barbara Calahan, on March 26, 2020, stating that the children had not explicitly mentioned sexual assault in their therapy sessions. The District Court subsequently conducted an in camera review of Dukart's records.

¶5     On October 26, 2020, after "carefully considering the rights of the Defendant to prepare his defense, including review of any exculpatory evidence, versus the privacy rights of the complaining witnesses," the District Court denied Calahan's motion for deposition and production.  Calahan's case proceeded to trial.

¶6     During voir dire, on January 25, 2021, defense counsel asked the venire panel whether they would "hold [Calahan] to a higher standard, to make him prove beyond a shadow of a doubt" that he didn't sexually abuse A.K.  I and A.K. II.  Counsel then asked whether the jurors felt that "because [children] are younger, [they] are incapable of lying?" and continued, "I think potentially there might be an expert witness who will opine a child won't lie . . . by a show of hands, would everyone say that a child of any age is incapable of an untruth or lying?"

¶7     Juror M.C. offered in response that "[f]or a child to come forward with something like that and all the stigma that that brings forward, there's probably a degree of credibility there."  Counsel then asked M.C. directly whether he thought "what the [victims reported] was true or false?"  M.C. replied, "I don't have any information to make a conclusion on that question, like yes or no."  Pressing further, counsel asked M.C. whether he was giving the victims' "testimony more weight just because they've broken through the stigma?"  M.C. responded "probably."  Counsel then requested that M.C. be dismissed for cause.

¶8     Seeking to rehabilitate M.C., the State asked M.C. whether "he would follow the law" if the judge instructed him to do so.  M.C. responded "[y]es." The State continued, "[i]f no evidence comes into this case involving the rate of reporting in these types of offenses, would you not consider that in deliberating about the facts in this case?"  M.C.

3

responded, "I think given what I said, it's very difficult for me to say 100 percent yes, but I would do my best." And when the State asked for clarification, M.C. stated "I mean, if that's what I'm being instructed to do, I'll do what I'm instructed." The District Court denied Calahan's request to dismiss M.C. for cause. Later, Calahan exhausted his final peremptory challenge on M.C., and the trial proceeded without him.

¶9 During trial, the victims and Calahan's son recanted much of the testimony they provided during their October 16, 2019 forensic interviews. A.K. I and A.K. II denied that Calahan had ever purposefully touched them inappropriately, and explained they had previously lied because Calahan's introduction into their lives was a dramatic change to their family dynamic after their mother had been their primary caregiver, alone, for so long. The victims and Calahan's son all testified to the financial distress Calahan's arrest had caused the family and they established that they would like him to return home from prison.

¶10 The jury returned a guilty verdict on January 29, 2021, and the District Court ordered a presentence investigation report and psychosexual evaluation.

¶11 At Calahan's April 26, 2021 sentencing hearing, the District Court adopted all conditions recommended in the August 31, 2020 presentence investigation report. In the District Court's May 7, 2021 judgment and commitment order, several "standard" conditions were included that did not conform to Calahan's oral sentencing.

## STANDARD OF REVIEW

¶12 We review a district court's grant or denial of discovery for an abuse of discretion. *State v. Duffy*, 2000 MT 186, ¶ 18, 300 Mont. 381, 6 P.3d 453.

4

¶13    Likewise, we review a district court's denial of a for-cause challenge for abuse of discretion. *State v. Cudd*, 2014 MT 140, ¶ 6, 375 Mont. 215, 326 P.3d 417 (citation omitted). A district court abuses its discretion if it refuses to dismiss a juror after serious questions have been raised as to the juror's ability to remain fair and impartial. *State v. Johnson*, 2014 MT 11, ¶ 8, 373 Mont. 330, 317 P.3d 164. If a district court denies a legitimate for-cause challenge, the structural error must be reversed. *State v. Russell*, 2018 MT 26, ¶ 10, 390 Mont. 253, 411 P.3d 1260 (citation omitted).

¶14    We review criminal sentences de novo to determine whether the district court's interpretation of the law is correct. *State v. Thompson*, 2017 MT 107, ¶ 6, 387 Mont. 339, 394 P.3d 197.

## DISCUSSION

¶15    *Issue One: Whether the District Court abused its discretion in refusing to grant Calahan's discovery requests following an in camera review of the victims' counseling records.*

¶16    Before trial, the District Court reviewed Dukart's records in camera and denied Calahan's motions for deposition and production of her records from visits with A.K. I and A.K. II. The District Court determined the victims' privacy rights outweighed any interest Calahan had in viewing their counseling records.

¶17    The mental health professional-client privilege is "placed on the same basis as . . . between an attorney and client." Section 26-1-807, MCA. Communications between a counselor and her client are thus typically non-discoverable in legal proceedings. On the other hand, criminal defendants have a right to discover potentially exculpatory evidence when it could affect the outcome of the proceedings. *State v. Stutzman*, 2017 MT

5

169, ¶ 28, 388 Mont. 133, 398 P.3d 265.  Because victims often have substantial and opposing privacy interests at stake in such evidentiary disputes, the victims' privacy interests must therefore be carefully balanced against the defendant's need for evidence that would be exculpatory or helpful to the preparation of a defense.  *Stuzman*, ¶ 29; *Duffy*, ¶ 21.  When there is a question about the discoverability of privileged mental health records, the relative interests of the defendant and the victim should be weighed in camera.  *Duffy*, ¶ 21 (citing *State v. Donnelly*, 244 Mont. 371, 376, 798 P.2d 89, 92 (1990)).  "If confidential information is not exculpatory or necessary for the preparation of the defense, defense counsel's right to review the information is outweighed by the victim's right to confidentiality."  *Stutzman*, ¶ 29 (quoting *Duffy*, ¶ 21).

¶18  Below, Dukart refused to produce records from her visits with A.K. I and A.K. II.  Calahan argued the privilege was the children's, not Dukart's, to assert.  Their mother and legal guardian, Barbara Calahan, had formally waived the privilege, and Calahan urged the District Court that it was thus required to order the deposition of Dukart and production of her records.  Declining to issue the order, the District Court "carefully consider[ed] the rights of the Defendant to prepare his defense, including review of any exculpatory evidence, versus the privacy rights of the complaining witnesses."

¶19  We have previously held that reviewing privileged material in camera is "[t]he best way to balance the accused's need for exculpatory evidence against the privacy interest of the victim."  *Duffy*, ¶ 23 (citing *Donnelly*, 244 Mont. at 376, 798 P.2d at 92).  In *Duffy*, the district court "reviewed a binder containing seven confidential reports," including "handwritten notes from mental health professionals, who were involved in the treatment

6

of [the victims]. . . ." *Duffy*, ¶ 24.  After refusing to order the production of the victims' mental health records, the defendant was convicted of sexual intercourse without consent and incest.  *Duffy*, ¶¶ 1, 24.  On appeal, the defendant argued that Montana should adopt a policy from other jurisdictions, whereby defense counsel is permitted to review privileged mental health records to discern whether they are exculpatory or inculpatory.  *Duffy*, ¶ 22 (citing *Commonwealth v. Stockhammer* 570 N.E.2d 992, 1001-02) (Mass. 1991)).  We conceded that "in camera review by the court is not the equivalent of scrutiny by the defendant's attorney."  *Duffy*, ¶ 23 (citation omitted).  Nevertheless, we declined to adopt the Massachusetts approach, finding that Montana's procedure better protects "the state's interest in uncovering and treating abuse."  *Duffy*, ¶ 23 (citation omitted).

¶20     We were satisfied with the district court's in camera review in *Duffy* such that it was unnecessary to review the records ourselves.  Here, because the children recanted prior testimony, we found it prudent to take that additional step.  After conducting our own careful review of Dukart's records, we agree they do not contain evidence that warrants disturbing Calahan's sentence.  Dukart's notes are consistent with the record that was developed and available to Calahan for impeachment purposes at trial below.  The District Court did not abuse its discretion when it refused to order the production of Dukart's records.

¶21     *Issue Two:  Whether the District Court abused its discretion in denying Calahan's motion to dismiss juror M.C. for cause.*

¶22     Criminal defendants have a fundamental right to a fair and impartial jury.  U.S. Const. amend. VI; Mont. Const. art. II, § 24.  A juror must be dismissed if he has "a

7

state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party." Section 46-16-115(2)(j), MCA. A juror's "state of mind" may be ascertained from statements expressing fixed opinions, or statements that raise serious questions as to potential bias. *Johnson*, ¶ 10. We focus our inquiry about whether a juror has expressed a "fixed opinion" on their "spontaneous, and usually initial, statements or responses." *Golie*, ¶¶ 24-25. When assessing whether a juror's statements have raised "serious questions," we recognize that jurors bring their life experiences with them to trial. *State v. Rogers*, 2007 MT 227, ¶ 23, 339 Mont. 132, 168 P.3d 669. A juror can remain impartial notwithstanding their personal views on or relevant experience with particular crimes. *Russell*, ¶ 13 (citation omitted). The "totality of the circumstances presented" is considered when making determinations about a juror's state of mind. *Golie*, ¶ 8.

¶23 When a juror unequivocally states that he would be "partial" to law enforcement in a jury trial, for example, he should be removed from the panel for having fixed opinions on the credibility of the State. *State v. Allen*, 2010 MT 214, ¶ 27, 357 Mont. 495, 241 P.3d 1045. Similarly, a juror should be dismissed for raising "serious questions" about his ability to remain fair and impartial if he states that he would "absolutely not" want to be judged by someone who shared his views on drunk driving, then offers only a lukewarm affirmation that he could "probably" be fair to a defendant. *Golie*, ¶¶ 11-12.

¶24 On the other hand, if a juror expresses doubts but then unequivocally affirms that she can remain impartial, there is not a "serious question" as to her state of mind. *State v. Heath*, 2004 MT 58, ¶ 27, 320 Mont. 211, 89 P.3d 947. In *Heath*, the District Court did

8

not dismiss a juror from a rape trial after she expressed doubts about her potential bias and described her personal history as a stalking victim and rape survivor advocacy volunteer. *Heath*, ¶ 21. Initially, the juror stated that she "probably wouldn't want somebody on the jury that had [her] experience. . . ." *Heath*, ¶ 21. Later, the juror unequivocally affirmed the defendant had a right to a fair and impartial jury and explained that she could "just look at the facts of [the] case" to assess whether the State satisfied its burden. *Heath*, ¶ 24. We affirmed because, unlike *Golie* or *Allen*, the juror "repeatedly stated that she would focus solely on the facts of the case" and she therefore did not have "an improper state of mind . . . ." *Heath*, ¶¶ 34-35.

¶25 Here, prior to learning any factual history surrounding this matter, M.C. offered his personal view that there is a "stigma, public or private, that [] victims face on a regular basis that keeps them from coming forward with allegations like this. . . ." M.C. posited that victims' claims could be made more credible simply by confronting that stigma and reporting them. Calahan construes M.C.'s statements as implying a bias that would raise a "serious question" as to his ability to remain impartial. Despite acknowledging a personal bias towards victims of sexual assault, like *Heath*, M.C. repeatedly stated that he would follow the law if instructed to do so by the judge. His affirmations were not lukewarm. M.C. stated, unequivocally, "yes," when asked whether he could follow the law. And when asked whether he could "stick to the facts," he stated, "I'll do what I'm instructed." The District Court did not abuse its discretion in refusing to dismiss juror M.C. for cause.

¶26  *Issue Three:  Whether the District Court's written judgment must conform to Calahan's oral sentencing.*

¶27  The parties agree the District Court's written judgment must conform to Calahan's oral sentencing.  Indeed, a sentence that is "orally pronounced from the bench in the presence of the defendant is the legally effective sentence and valid, final judgment." *State v. Lane*, 1998 MT 76, ¶ 40, 288 Mont. 286, 957 P.2d 9.

¶28  Conditions 18, 22, 23, 26, 27, and 29 do not conform to Calahan's oral sentencing and should therefore be excised from the written judgment.  Although Conditions 15 and 16 were not expressly included at Calahan's oral sentencing, under Montana law, "an individual may not be a registered [medical marijuana] cardholder if the individual is in the custody of or under the supervision of the department of corrections or a youth court." Section 50-46-307(5), MCA.  Conditions 15 and 16 should be included because they simply give effect to Condition 9, requiring Calahan to "comply with all municipal, county, state, and federal laws and ordinances."

**CONCLUSION**

¶29  The District Court did not abuse its discretion when it denied Calahan's motions for deposition and production.  Likewise, it did not abuse its discretion in refusing to dismiss juror M.C. for cause.  We affirm in part, reverse in part, and remand to the District Court to conform its written judgment to Calahan's oral sentencing, consistent with this Opinion.

/S/ MIKE McGRATH

We Concur:

/S/ BETH BAKER
/S/ LAURIE McKINNON
/S/ INGRID GUSTAFSON
/S/ JIM RICE