FILED

09/02/2025

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 22-0637

DA 22-0637

IN THE SUPREME COURT OF THE STATE OF MONTANA

2025 MT 196N

STATE OF MONTANA,

      Plaintiff and Appellee,

  v.

WALTER JASON PURKHISER,

      Defendant and Appellant.

APPEAL FROM:   District Court of the Nineteenth Judicial District,
In and For the County of Lincoln, Cause No. DC-22-12
Honorable Matthew J. Cuffe, Presiding Judge

COUNSEL OF RECORD:

      For Appellant:

          Gregory E. Paskell, Attorney at Law, Lynnwood, Washington

      For Appellee:

          Austin Knudsen, Montana Attorney General, Roy Brown, Assistant
Attorney General, Helena, Montana

          Marcia Jean Boris, Lincoln County Attorney, Libby, Montana

Submitted on Briefs:  June 25, 2025

Decided:  September 2, 2026

Filed:

_____
Clerk

Justice Katherine Bidegaray delivered the Opinion of the Court.

¶1    Pursuant to Section I, Paragraph 3(c), Montana Supreme Court Internal Operating Rules, this case is decided by memorandum opinion and shall not be cited and does not serve as precedent.  Its case title, cause number, and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Walter Jason Purkhiser appeals the September 2022 judgment and sentence of the Montana Nineteenth Judicial District Court, Lincoln County.  On January 22, 2022, officers from the Lincoln County Sheriff's Department responded to a call relating to a domestic dispute in progress.  When officers arrived, they discovered that Purkhiser and his girlfriend, H.S., were intoxicated.  Purkhiser was located at the front door of the residence upon officers' arrival, while H.S. had barricaded herself in her bathroom.  H.S. initially denied any injury by Purkhiser, but then admitted that Purkhiser had twisted her arm behind her back, causing her pain.  Officers arrested Purkhiser and charged him with misdemeanor Partner Family Member Assault (PFMA), which was subsequently amended to felony PFMA.

¶3    While he was incarcerated, Purkhiser contacted H.S. via telephone at least 20 times. During these phone calls, Purkhiser repeatedly attempted to manipulate H.S. into recanting her statements concerning the evening police were summoned to H.S.'s residence, to alter her version of what transpired that evening, and to convince her not to cooperate with law enforcement or testify against him.  After the series of phone calls to H.S., the State

amended its charges against Purkhiser to include one count of tampering with a witness due to Purkhiser's conduct.

¶4 The matter was set for trial and the jury was called on July 13, 2022. During jury selection, the prosecutor asked the jury panel whether anyone had been the victim of an assault. One prospective juror, B.H., reported that she had been the victim of sexual abuse as a child, but indicated that she would be able to set aside any feelings relating to the assault and proceed in a fair and impartial manner. Defense counsel moved to strike B.H., the State opposed the motion, and the court denied it without prejudice if B.H. would later indicate that she could not be fair and impartial during jury selection. Notably, defense counsel did not raise another for-cause challenge or use a peremptory strike on B.H. B.H. ultimately served on the jury.

¶5 At trial, the State introduced evidence against Purkhiser, including a recording of the 911 call made by H.S. on the night of the incident, which contained all the verbal communications between H.S. and the Lincoln County Sheriff's Department. During deliberations, the jury asked the court two questions: (1) if they could be provided with a written transcript of H.S.'s testimony at trial; and (2) if the court would allow the recording of the 911 call to be replayed for them. The court denied the request for the written transcript but allowed the jury to hear the 911 phone call one additional time within the courtroom. The jury was unable to reach a unanimous decision relating to the PFMA charge but found Purkhiser guilty of the tampering with a witness charge. Purkhiser was eventually sentenced to 10 years at the Montana State Prison. Purkhiser now appeals the sentence and judgment entered against him.

¶6     This Court reviews a district court's decision allowing exhibits to be taken into jury deliberations for an abuse of discretion. *State v. Green*, 2022 MT 218, ¶ 11, 410 Mont. 415, 519 P.3d 811. An abuse of discretion occurs when a court acts arbitrarily, unreasonably, or without the employment of conscientious judgment, resulting in substantial injustice. *State v. Nordholm*, 2019 MT 165, ¶ 8, 396 Mont. 384, 445 P.3d 799.

¶7     This Court reviews a district court's denial of a challenge to a prospective juror for cause for an abuse of discretion. *State v. Deveraux*, 2022 MT 130, ¶ 19, 409 Mont. 177, 512 P.3d 1198. In this context, a court abuses its discretion if it denies a for-cause challenge "when a prospective juror's statements during voir dire raise serious doubts about the juror's ability to be fair and impartial or actual bias is discovered." *Deveraux*, ¶ 19 (citation omitted).

¶8     Purkhiser first argues that the District Court abused its discretion when it allowed the jury to hear the 911 call during deliberations, classifying its purpose as testimonial and thus requiring a "particularized need" to be articulated for its subsequent replay. In response, the State contends that the 911 call did not relate to the witness tampering charge for which the jury found Purkhiser guilty, and further argues that the call was not testimonial.

¶9     This Court recognizes "the common law rule against submission of testimonial materials to the jury for unsupervised and unrestricted review." *Nordholm*, ¶ 10 (citation omitted). The purpose of the rule is to prevent the jury from giving undue weight to a particular witness's statements over evidence presented by other witnesses. *Nordholm*, ¶ 10.

4

¶10 Here, the 911 call was testimonial in nature, as it was a contemporaneous description of events made during the police dispatch call by H.S. in her accusation against Purkhiser. However, the 911 call was not given to the jury for unsupervised and unrestricted review; rather, the District Court allowed the jury one additional replay of the 911 call in the courtroom, which is not prohibited under our previous case law. While replaying the call in open court avoided the concerns of *Nordholm* about unsupervised jury access, *State v. Hoover*, 2021 MT 276, ¶ 17, 406 Mont. 132, 497 P.3d 598, nonetheless requires trial courts to identify a "particularized need" before permitting jurors to rehear testimonial evidence during deliberations. The District Court made no express inquiry of whether the jury's request was grounded in such a need, which presents a procedural shortcoming.

¶11 A trial error is harmless if the State can demonstrate that "there is no reasonable probability that the inadmissible evidence might have contributed to the conviction." *State v. Van Kirk*, 2001 MT 184, ¶ 47, 306 Mont. 215, 32 P.3d 735. Although Purkhiser argues the jury may have convicted on witness tampering as a form of compromise after deadlocking on PFMA, the evidence of tampering was overwhelming and distinct: the recorded jail calls contained direct statements urging H.S. not to cooperate, which H.S. confirmed in testimony. In these circumstances and because the 911 call related only to the PFMA charge, on which the jury hung, and not on the witness tampering conviction, we conclude under *Van Kirk*, ¶ 47, that there is no reasonable probability the replay contributed to the guilty verdict on the tampering with a witness charge.

¶12 Next, Purkhiser argues that the District Court erred when it did not excuse B.H. due to her history of sexual abuse. Relevant here, Purkhiser points to the manner in which B.H.

5

responded to questions relating to her impartiality during the jury selection process, which he argues showed an inability to be impartial. Accordingly, Purkhiser argues that this error resulted in structural error requiring a new trial. In response, the State asserts that B.H. never expressed bias or a fixed opinion when answering questions during jury selection and affirmatively stated that she could set aside her past experiences and be impartial. The State further contends that no bias was observed during trial from B.H., and defense counsel never renewed the for-cause motion initially made during jury selection. Most critically, the State notes that Purkhiser did not use a peremptory strike on B.H. during jury selection.

¶13 A juror must be dismissed who has "a state of mind in reference to the case or to either of the parties that would prevent the juror from acting with entire impartiality and without prejudice to the substantial rights of either party," which may be presented from statements showing fixed opinions or that raise serious questions as to potential bias. *State v. Calahan*, 2023 MT 219, ¶ 22, 414 Mont. 71, 538 P.3d 1129. Regardless of personal views or relevant experience with particular crimes, a juror can remain impartial based on the totality of the circumstances presented relating to the juror's state of mind. *Calahan*, ¶ 22. Here, B.H.'s responses were mixed. While she affirmed she could "put aside" her experiences, her initial answer—"I think so" and "yeah"—was equivocal. Under *State v. Morales*, 2020 MT 188, ¶ 12, 400 Mont. 442, 468 P.3d 355, we cautioned that leading or loaded questions yielding one-word answers are "unreliable" measures of impartiality because they place prospective jurors in the untenable position of disagreeing with the court. Here, while the inquiry was limited and close to that line, the District Court

6

repeatedly confirmed with B.H. that she could remain impartial. On this record, though imperfect, the voir dire did not reveal actual bias. Therefore, considering the totality of the circumstances, including B.H.'s repeated assurances, the District Court did not abuse its discretion.

¶14 Further, Purkhiser's contention that the District Court's alleged error was structural in nature fails to meet all required elements. A structural error during the jury selection process occurs when: (1) the district court abuses its discretion by denying a challenge for cause to a prospective juror; (2) the defendant uses one of his or her peremptory challenges to remove the disputed juror; and (3) the defendant exhausts all his or her peremptory challenges. *State v. Good*, 2002 MT 59, ¶ 62, 309 Mont. 113, 43 P.3d 948. Here, Purkhiser did not use a peremptory challenge to remove B.H., which defeats the second prong of the *Good* test. Although Purkhiser argues he was effectively forced to accept the "lesser of two evils," *Deveraux*, ¶ 26, holds that such claims do not substitute for actual use of a peremptory challenge. Structural error is not established absent a direct link between the denied for-cause challenge and the exhaustion of strikes because the statutory framework presumes that counsel retains discretion in exercising peremptory challenges. Accordingly, Purkhiser fails to establish structural error in selection of his jury.

¶15 Finally, "[a] cause may not be reversed by reason of any error committed by the trial court against the convicted person unless the record shows that the error was prejudicial." Section 46-20-701(1), MCA. The jury was hung on PFMA—the only charge that could have implicated bias from B.H.—and convicted Purkhiser on witness tampering, a charge

7

supported by independent and overwhelming evidence. On this record, any error was harmless, and we will not reverse the trial court for failure to remove B.H.

¶16 We decide this case by memorandum opinion pursuant to Section I, Paragraph 3(c) of our Internal Operating Rules. In the opinion of the Court, the case presents a question controlled by settled law or by the clear application of applicable standards of review.

¶17 Affirmed.

/S/ KATHERINE M BIDEGARAY

We Concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ INGRID GUSTAFSON
/S/ JIM RICE